May it please the court, my name is Rick Ostrove and I am here representing the appellant Howard Norton. I am proud to stand here today representing Mr. Norton because I think a lot of people who are accused of violations just pay cut a deal, pay the fine, and go home. Mr. Norton does not believe that that's appropriate and in preparing for this I read again the Albright case and I also listened to the recent Supreme Court arguments in the Seventh Circuit appeal of Manuel and one thing that is clear from reading that those decisions and listening to the oral arguments is that our Supreme Court justices don't necessarily entirely agree on how all of these rights are supposed to be formulated but one thing they do all agree with is that going back to the time of the Magna Carta and certainly our bill of rights, one of the fundamental things that our Constitution was designed to do is to protect citizens from government abuse and in addition to federal protections in the Bill of Rights which are at issue in this case, Justice Stevens in the dissent talks about Illinois law but it's equally applicable to New York and what has a procedure intended to ensure that evidence of probable guilt has been assembled before a criminal prosecution is initiated, before a criminal prosecution is commenced is critical because as all the Supreme Court justices seem to recognize and as this court has seemed to recognize in many of its decisions regarding liberty interest, being accused of a crime is a very serious consequences. Now in this case the crime was a violation but the violation carried the potential for 15 days in jail and not only was it 15 days in jail but 15 days in jail for each day that the violation existed which could have theoretically put my client in jail for months on end and certainly required him to go through the expense of lawyer and required him to be subject to the And I believe reading the case law it shows that simply having to hire a lawyer and be subjected to the process of the court is enough to affect a liberty interest and New York State has put into place procedures to make sure that before the government... New York has many criminal procedure rules that are not required by the federal Constitution. So how are we to tell... I mean you're contending that... you're not contending that all of those criminal procedure rules are sort of automatically turned into federal liberty interests, are you? No I don't think that I am. How are we to tell which ones should be promoted in that way? Well I think that one thing is clear is that the ones that are designed to ensure that evidence of guilt has been marshaled and assembled prior to a criminal prosecution being initiated, that those are the procedural protections that are required by the Constitution. But why is that? The Federal Constitution does not require that. At least what we're talking about after all is not whether there... of course it is required as a matter of federal constitutional law that there is probable cause, but that probable cause to initiate a prosecution could be based on hearsay testimony. Now New York says no, which is fine and is more protective of the individual and so you may have some state law claim based on that. But why does the fact that New York chooses to be more stringent create a federal liberty interest that doesn't independently exist under the Fourth Amendment? The key is the reason why New York has that. And the analog is... Presumably New York has good reasons for every criminal procedural rule they adopt. If New York chooses to adopt certain evidentiary standards, for example, those standards would be there to protect someone against wrongful conviction, presumably, to assure that no innocent person is convicted even if some guilty go free. So of course that's the judgment that New York makes about that balance. Why does that distinguish this rule? Because the reason why that balance is there is because in the case where an information is used for a violation, you don't have the grand jury or preliminary hearing protections that you would otherwise have if it was a misdemeanor or a felony. And I believe that under the Federal Constitution... But suppose New York chooses to have a grand jury requirement for initiation of any prosecution even down to the violation level. That would also be an additional protection of the right not to be charged. Would that also be a federal violation? A federal constitutional right? I believe that the point is that the Federal Constitution does require some review for facial sufficiency before a criminal prosecution is initiated. New York does require that in a grand jury there not be hearsay testimony, something that's not required as a matter of Federal constitutional law or even Federal rules. So are you suggesting... And that clearly would be a protection against, of exactly this requirement. Are you suggesting that the introduction of hearsay into a New York State grand jury would violate the Federal Constitution as a deprivation of due process? I'm not sure about the response to that, but I do believe that it is a violation of the Federal Constitution when you prosecute somebody without even alleging the elements of the crime that you are prosecuting them for. And in this case, that's what we have here. We have... It's not only... There are two issues. I mean, there's multiple issues, but one of them is the hearsay issue. The other issue is that if you look at the rental permit, for example, violation here, to be in violation of that law, you have to be renting the property as a home or a residence. And if you look at the information in this case, it doesn't even make that allegation, let alone on a non-hearsay basis. It doesn't say that. And similarly, on the storage, there's no allegation and there's no evidence whatsoever anywhere that anyone can cite to that Mr. Norton had anything whatsoever to do with the car being stored the way it was stored. To the contrary, the evidence in the record is clear that the town thought somebody was renting the property, that the car went on fire while it was in the garage, and town personnel apparently pushed the car, put out the fire and pushed the car out of the garage and left it there. So Mr. Norton is in Australia or wherever he may be or has no... There's not a stitch of evidence that he had any idea that that car was, A, ever on the property, B, in the driveway, or whether or not it was registered, which we don't even know that it was unregistered because they just put a conclusory allegation into their information and they think that's enough. But it's not enough. There has to be some explanation, not a conclusion. If I bring a discrimination case, I can't say my client was discriminated against and I'm going to survive a motion to dismiss. No. I have to explain how I know that person was discriminated against. Similarly, you can't just say a conclusion, the car is unregistered. You have to say I looked for a sticker, there was no sticker there. That allegation doesn't exist. There are so many defects in the way that the town went about what they did in this case that it is shocking. And they took advantage, quite frankly, of a system that they know people show up early in the morning, they cut deals, they pay the money, and then they go. And most people don't have the money to fight the criminal charges or to bring a civil charge afterwards to address this. And so these unconstitutional I didn't mean to interrupt. That's okay. I have a question on the Monell claim. Yes. Have you found any other examples of this policy that you allege? Our contention under Monell is that policymakers, first of all, we haven't done discovery, so we don't know, but we do know that there is a policy that these notices are sent out for people to show up at 9 a.m. in court when court doesn't even start until 9.30. And that's alleged. I believe that people come to court and settle out these cases. But more significantly in this case, the Monell allegation is that supervisors knew about this and allowed it to go on. And to the extent there's any question about that, I think it was three to four letters, which are all in the record, were sent to the highest level official in the town's law department. You allege her failure was not to respond to any of the letters? No. We allege that she was I believe that a Monell claim exists if policymakers can be found to have been deliberately indifferent to a constitutional violation. And here we have multiple letters explaining the constitutional violation, and they continue a prosecution that it took a state court judge one day to look at the motion. Anyone could look at this and say, oh, yeah, New York requires non-hearsay. There's not a non-hearsay here. Done. Oh, New York requires that it has to be rented as a home or residence. That's not alleged here. Done. They continued with that prosecution when the top-level policymaker and other policymakers who were directly involved also were informed of those constitutional violations and were deliberately indifferent to the fact that they were ongoing. And that alone supports the Monell claim. Did you find any other cases where this occurred, if we're talking about a policy? Did you find any other cases where they were deliberately indifferent to constitutional violations? Well, I don't know that you need to find any other cases when you have a top It would be nice, but I believe there are ample cases that say when a policymaker is informed of something and doesn't take action to correct it, that's enough to have a policy in practice. I mean, quite frankly, the policy in practice language is very confusing and misleading. It really should be a deliberate indifferent test, which is what policy in practice really means anyway. But putting that aside, it certainly exists in this case for a variety of reasons, not the least of which, and the one that's most unequivocal and most clear is that policymakers were A, participated in this and at a minimum were notified of the problems and never took steps to correct the fact that there were constitutional violations going on, and therefore they condoned or otherwise endorsed the practices. And quite frankly, I believe it's pretty clear why they allowed this to go on, because they all who knew who Mr. Norton were, because they were involved in two decades of litigation with this man, because he had won Norton one, he had cost them a ton of money, and he was causing them a lot of headaches. Why? Because he was trying to get them to comply with the law, because it wasn't acceptable to Mr. Norton to allow the town to do whatever it wants to do to its citizens, who usually, and the reason why you don't have a lot of other cases is because if I'm a citizen and I come to court and I'm told to pay a $100 fine or possibly be criminally convicted and have to pay a lawyer to deal with this, most people line up at those things and pay the $100 and go on with their lives, let alone let these kinds of things go up to, you know, state courts where these things are decided. There's just not a lot of case law out there with violations for that simple reason. So thank you, Mr. Ostroff. Thank you. I reserve two minutes. Thank you. Good afternoon, Mr. Court, please. My name is Robert Kalik, and my firm represents the town of Islip and its officials here. I am now reminded why our appellee's brief is 65 pages long. It shouldn't be necessary, but with the type of unfounded scattershot constitutional allegations that have been made that don't pass the plausibility test of Iqbal and Tombley, we're required to address them on this Court. A local criminal court judge properly determined that the accusatory information laid out sufficient probable cause to proceed. There goes the initial claim. The content of that accusatory instrument, which begins at page 179 of the appendix, is incorporated into our Rule 12 motion under Kamholtz, and it goes beyond the hearsay which is sufficient under New York criminal procedure law and substantive law to support the accusatory instrument, to show in detail that the local code enforcement official spoke to Mr. Norton's tenant. Mr. Norton's tenant says, I have been renting this entire dwelling. That's a home. He dwells there for — since 2006. He refused to sign an affidavit to that effect? Yes, Your Honor, but what that — Why would you ask for an affidavit if you didn't think it was necessary? Because it aids a prosecution and it prevents all of us from convening before a judge of the Eastern District and Your Honors, because in effect it provides the type of incontestable evidence that's already in the record, but basically leaves Mr. Norton no harbor to try to launch a groundless Section 1983 action on the time. Your Honor, to the contrary, I respectfully submit that the fact that the code enforcement official asked for an affidavit was confirmatory of what he knew, was confirmatory of the statement in the accusatory affidavit. It's confirmatory of the statement in his logs and in his note, which is the tenant said to me, I am the tenant. I rented from Mr. Norton. I've rented it for four years. I pay over $1,500 per month rent. All of those are such crystal clear indicia of probable cause that all of these claims must be dismissed on a threshold basis, and these are part of our Rule 12c motion. That matter dismissed because there was no evidence? There was no evidence admissible to a court? Well, just answer me yes or no. No, are you saying a Rule 12 motion was granted by Judge Chen? It was granted on multiple grounds, Your Honor, including this accusatory instrument on the rental property. Wasn't that dismissed because it was based on hearsay? It was dismissed as to its sufficiency, not as the sufficiency to support the initiation of a criminal prosecution. So the local criminal court judge, Judge Gogles first, denied the motion to dismiss, saying that you can consider the hearsay allegations. They're sufficient to issue a warrant to proceed with the criminal process and initiate a violation-level process. On the motion to dismiss, the second motion, he said it's insufficient to support conviction because it's based on hearsay. We quarrel with that, but the point is even that, Judge Pooler, is not itself a favorable termination to support the malicious prosecution claim under settled cases. So what we have here is probable cause. Is it a favorable termination? No, it's not, Your Honor. We have numerous cases cited in the brief that, and it's, let's see, where have I got it here? The, this court's holding in Fulton against Robinson in 19, excuse me, in 2002 is that a dismissal on procedural grounds is not a favorable termination for purposes of bringing a constitutional claim or a tort claim of malicious prosecution. It's not a determination on the merits that supports it. And that was a statute of limitations-based dismissal, but it's no different from one involving the sufficiency of the accusatory instrument on a motion to dismiss. But there are, but Your Honor, the evidence of probable cause is overwhelming. As I said, the exhaustive detail in the accusatory instrument and in the code official's verification of it, as I said, so clearly speaks of probable cause that it's almost facetious to say that when a code officer is called to a home to follow a fire, observes a burned out truck on the premises multiple occasions over 17 days, speaks to a tenant who says, I'm the tenant, there's no rental permit, because that's not disputed, that I rent the entire house, that I pay a specified rent, that that is just an insuperable bar to all of these claims justifying the dismissal and ending the burden upon the town and its officials to defend themselves in the United States District Court and before the Second Circuit to justify a manipulative pleading in the face of the therapeutic rule of Iqbal and Tomley, that you have a plausible allegation. You know, I recommend, I commend you to read paragraph 305 of Mr. Norton's complaint. It says, he owns rental homes throughout the town of Islip, which he claims is subject to unconstitutional imposition of the rental law. Well, the rental permit law is constitutional. It's not being collaterally challenged here. His own allegation is that he's in the business of renting homes that require a permit, and he maintains the law is unconstitutional. He never denies that it's rented in his complaint. He has no plausible allegation that it's not rented. He has no defense to the pictures of the burned-out vehicle that creates a presumption under New York State law that it's subject to his control. It's unfortunate the district court excluded the we mentioned it in the brief, the color photograph, we discussed it elsewhere, that was incorporated by reference in the complaint. So we respectfully submit this Court can't consider it on the Kamholtz, which was clearer because, in effect, it showed there was no license plate, there was no bumper, there was no window to put a registration on. This was a burned-out vehicle. The Monell policy is only against the town, not against individuals. There's no allegation that any policymaker of the town has a practice of instructing its code enforcement officials to go out, trespass, issue accusatory instruments, and summonses without probable cause. The defense counsel argues that the town attorney and the deputy town attorney were both informed in multiple letters that the policy they were pursuing was unconstitutional, and that's the Monell policy that they are objecting to. Your Honor, receiving letters from a defense counsel that challenges the legitimacy of legitimately and duly filed proceedings in a suburban town with 200,000 people that's overwhelmingly residential, where they try to preserve the character, they are carrying out a valid police power, the New York Court of Appeals has said, and we don't cite it, in Town of Dryden that one of the most important police powers that could be exercised by a locality is the zoning power. That was the case that said they could stop fracking because it is the core function of local government to preserve the quality of life. So how do you do it? You have zoning statutes that are constitutional. You have code officials that enforce it. You have courts that require that it be done in accordance with the New York criminal procedure law. None of this justifies the dignified effort this Court is investing in Mr. Norton's manipulative complaint where he says, you know, I want to rent my houses, I think the rental permit law is unconstitutional, and I'm going to write letters to the deputy town attorney who is not shown or alleged to be a policymaker with final decision-making authority, and says that's an indifference. First of all, there was no trespass, there was no you can't trespass on a driveway, there was no instruction or allegation that the code enforcement official was instructing by anyone to enter a house without permission. Ample New York and Federal cases say a landlord has no expectation of privacy with its rent to a tenant, he's left to argue and in effect, well, after the fire, the lease ended. The implausibility of this complaint does not justify the intention, the burden on the town, or interfering where its ability and good faith manifest in this record that's part of the Rule 12 motion to enforce the zoning code in a reasonable way by saying he can't rent this house for 4 years for $1,500 a month without a permit, he can't leave a burned-out truck there, and he can't turn every technical victory in a local criminal court where there was probable cause and adequate State court procedure into a Federal constitutional claim. I have a couple of quick questions. You don't think we have to determine whether there were underlying constitutional deprivations in order to resolve the appeal? No, Your Honor, you can reach it without doing, but as Judge Lynch pointed out, and as this Court has held, there is no Federal constitutional right to require compliance with local State criminal procedures. But it's your view, I take it, that we could decide this matter regarding the individual defense on the basis of the holding regarding immunity and personal involvement? Without question. They don't challenge the immunity. It was properly accorded. It was, we think, unwarrantedly challenged below and is properly conceded on appeal. And the decision regarding the Monel liability on Norton's failure to plausibly allege any qualifying municipal action, I guess we could do it on that basis. Absolutely, Your Honor. Finally, you've used the term manipulative a few times. What, in your view, and this may be extra record, but what exactly are you suggesting by the accusation of manipulativeness? Your Honor, I was so struck when I read paragraph 305, Plaintiff, during all relevant times, owned and continues to own improved residential real properties that serve as rental properties and or rental dwellings in the town and which are subject to an invalid and unconstitutional laws provided for in the town rental code. And here we are saying there's no probable cause in this proceeding and that his, upon his own complaint, contains an allegation that is plausibly read of saying, this is a rental property without a rental permit. He's in violation of a lawful local code, and he finds every, what is the word? Permutation of way of stating everything but avoiding the concession in paragraph 305. That, to me, Your Honor, is legal manipulation, and I stand by that adjective. If there's no other questions, I thank the Court for your attention and patience. Thank you. Mr. Ostrov. Thank you. You have two minutes. Just to quickly respond to this manipulation concept, first of all, there were declaratory relief claims which were not addressed at all by the lower court, Federal ones that should be addressed, which are in, defined in paragraph 60 and 61 of my brief, and one of them relates to exactly what counsel was just talking about, which is that to get a rental permit, you have to swear, and this is a town practice, and it's their policy and it's their law, you have to sign a document saying that the town can just alter your CO, alter your property rights at will. And so that and the other declaratory relief that wasn't addressed by the lower court are serious issues. It's not manipulation to raise them, and we go through them in particular detail, or at least I identify them here, and you can look at them in our complaint. I do want to also mention that the dismissal of the criminal actions was not based only on non-hearsay, which I think is enough here also, but specifically the court found that on page 586 of the record that while the ordinance prohibits the outdoor storage of unregistered vehicle, it does not contain any language which would permit the people to charge the defendant with allowing and maintaining the outdoor storage. So in other words, the lower court found, as a matter of law and properly so, as a matter of fact, they didn't exist when it came to the storage of the vehicle, because they're trying to hold him responsible for something while having no evidence whatsoever that he had anything to do with that storage. And that is a malicious prosecution claim under the Constitution. Mr. Norton was treated differently than other people in the town? There's no question about that. The evidence is right in the record. His brothers owned the same property. Why do you think they went after Mr. Norton? And by the way, they served him through his brother, who theoretically would have been equally responsible to the extent anyone would have been responsible. Did the tenants say he rented the property from your client? I know that that's what the investigator says he says. What he actually said, I have no idea, because we don't have any non-hearsay allegations. But one thing we know, that they don't even say that the tenants said. I'm a little puzzled whether the allegation here is that Mr. Norton was treated differently than everybody else because he's sort of a pain in the butt to the local authorities, or whether most of your initial argument was dedicated to the proposition that he's treated the same as everybody else. And he's crusading on their behalf. Well, there were a lot of actions that were taken here. I do believe without a doubt, and I spell it out in detail in my brief. I mean, only eight minutes doesn't give me enough to go through everything. But I do believe there's no question that he was singled out to be mistreated because of who he is and what he did. And I believe that that's a constitutional violation of the First Amendment. But I also do believe that the town does have certain other practices, like why was Mr. Eckert, a town code inspector, reporting to a fire? It was either one of two things, and I don't know at the pleading stage. We have alleged that they had a town practice of sending the inspectors out to trespass and look at the property to find code violations. Why do you say to trespass? I don't understand that. Because the fire, the firefighters are there. They do what they need to do to put out the fire. And then somebody goes out to see what the property looks like. I don't get why that requires a trespass. What does a code enforcement officer have to do with a firefight? And that was only one instance. When a building burns down, it's a reasonable thing to wonder whether there's some kind of code violation, isn't it? And the town code specifically says that you need the owner's permission to go on and look for that. The town code, they put that in their code. You can't just wander. Because they just wander on to, first of all, there were three instances of trespasses, two of which happened long after the fire was done over and whatever. But on this first one, I don't think the government has a right because something happens on a property. The government has a right to come in and look at your house and look at the structure and take notes and walk around in the back. I certainly hope that's not the case. I don't think that's constitutional. And not only that, that was only one instance. How do they justify the fact that he was on the property searching the curtilage and searching around the house? The two other instances that we alleged in the complaint. And so there are so many different violations of Mr. Norton's rights in this case, that Monell, for example, certain violations were saying the town attorneys participated in, the deputy town attorney participated in, and then the town attorney was notified of. And other ones are a product. We did originally, and we decided we made a decision not to appeal that. And I don't believe that you do need to have any individual defendants to bring a 1983 claim under Monell. So whether there was a qualified immunity or not doesn't change the fact that you can. And I think it was the Barrett case that made that crystal clear. So, yeah, I mean, I think it's easy to say, well, there were notifications about some violations and Monell is implicated that way. And there were other violations that we believe occurred as part of a town practice. And we believe that Monell was violated that way. You have a deputy town attorney saying, don't hold this warrant application until I come back from Riverhead to handle it myself. And you're saying this wasn't a unique case where they were doing something here or there was a... I don't think I was saying anything. I meant that you were saying, as in the generic, you were saying, not you specifically. I actually meant to say they're saying. I was asking if you've received contracts here.